J-S31003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DENISE HARKINS AND NEIL HARKINS, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 637 EDA 2023 |
| THREE MONKEYS CROYDEN, INC., D/B/A DOG AND BULL BREW AND MUSIC HOUSE | : | |
| | : | |
| | : | |

Appeal from the Order Entered February 13, 2023
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2019-03333

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                **FILED AUGUST 2, 2024**

Appellants, Denise Harkins and Neil Harkins (husband and wife),[1] appeal from an order entered on February 13, 2023 in the Civil Division of the Court of Common Pleas of Bucks County that granted summary judgment in favor of Appellee, Three Monkeys Croyden, Inc. D/B/A Dog and Bull Brew and Music House (Three Monkeys).  We affirm.

The trial court summarized the historical facts as follows.

On August 6, 2019, [Appellants] filed a three-count complaint against [Three Monkeys] for personal injuries allegedly sustained by [Mrs. Harkins].  [Counts 1 and 2 of Appellants' complaint alleged that the negligence of Three Monkeys caused Mrs. Harkins to sustain injuries.  Count 3 set forth a loss of consortium claim

_____

[1] Individually, we shall refer to Denise Harkins as "Mrs. Harkins" and Neil Harkins as "Mr. Harkins."

on behalf of Mr. Harkins. Three Monkeys] is a restaurant and bar located in Croydon, Bucks County, Pennsylvania. On October 20, 2018, [Mrs.] Harkins visited [Three Monkeys], slipped, and sustained injuries to her right knee[. H]er injuries included: a right tear of the meniscus, patellar tendon rupture, displacement of the inferior fragment into the medial joint recess, fracture of the right patella, right knee swelling, effusion, and strain of muscle/tendon at lower right leg. [Mrs.] Harkins was wearing heels at the time of the incident, and alleges she slipped by reason of a dangerous, defective carpet and/or [tile] floor. [Mrs.] Harkins testified that no food or other substance caused her to slip; [she] believe[d] she slipped as a result of a wave in the carpet and/or the rubber edging of the carpet. [Mrs.] Harkins was unable to [confirm that] a wave in the carpet existed prior to [her] fall, or only after.

[At the time of Mrs. Harkins' fall, Three Monkeys] maintained security cameras in the general area of the incident; footage from the security cameras [was] maintained for a period of approximately six weeks. [Six weeks after] the incident, the footage of this particular incident was deleted. On February 14, 2019, approximately four months after the incident, [Three Monkeys received notice that Appellants intended] to pursue a cause of action.

Trial Court Opinion, 4/18/23, at 1-2.

Three Monkeys initially moved for summary judgment before the trial court on April 6, 2022. Appellants filed a response arguing, in part, that the summary judgment motion was premature. After supplemental discovery was conducted and additional briefing was completed, the trial court granted summary judgment in favor of Three Monkeys on February 10, 2023. Appellants timely appealed.[2]

_____

[2] On March 10, 2023, the trial court directed Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). *(Footnote Continued Next Page)*

Appellants raise two questions for our review.

Did the lower court err in granting summary judgment and dismissing the complaint when genuine issues of fact existed as plaintiff and an independent witness testified as to the cause of the fall and there was detailed unrebutted expert testimony?

Did the lower court err in granting summary judgment and dismissing the complaint when despite immediate knowledge of the incident and the seriousness of the injury, defendant disposed of the video surveillance of the incident before it could be inspected by plaintiff and therefore plaintiff is entitled to an adverse inference that this evidence would have been unfavorable to defendant?

Appellants' Brief at 5.

We apply a familiar standard of review when considering an order that grants a motion for summary judgment.

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary. We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

***Sokolsky v. Eidelman***, 93 A.3d 858, 861-862 (Pa. Super. 2014) (internal quotation marks and citations omitted).

Additionally,

_____

Appellants timely complied on March 27, 2023. The trial court issued its opinion on April 18, 2023.

[since the Pennsylvania Rules of Civil Procedure only permit summary disposition of cases where the record is devoid of material factual disputes, we have also observed] that:

A proper grant of summary judgment depends upon an evidentiary record that either[:] (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense. Under [Pennsylvania Rule of Civil Procedure] 1035.2(2), if a defendant is the moving party, [the defendant] may make the showing necessary to support the [entry] of summary judgment by pointing to materials which indicate that the plaintiff is unable to satisfy an element of [the plaintiff's] cause of action. Correspondingly, the non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party.

Thus, a plaintiff's failure to adduce evidence to substantiate any element of [the plaintiff's] cause of action entitles the defendant to summary judgment as a matter of law.[3] As [stated above], our scope of review of a trial court's order granting summary judgment is plenary [and our standard of review is the same as that of the trial court]. We will reverse the court's order only where the appellant ... demonstrates that the court abused its discretion or committed legal error.

*Fisher v. J.A. Sexauer*, 53 A.3d 771, 774-775 (Pa. Super. 2012) (citations, quotation marks, and brackets omitted).

[When a motion for summary judgment is presented to the trial court, the record is expressly confined] to the pleadings, depositions, admissions, responses to interrogatories, affidavits, and reports signed by expert witnesses that comply with the rules of discovery. *Finder v. Crawford*, 167 A.3d 40, 44 (Pa. Super. 2017) (citation omitted).

"In order to establish a claim of negligence the plaintiff has the burden of proving four elements: 1) a duty or obligation

_____

[3] "Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." *Sokolsky*, 93 A.3d at 861-862.

recognized by law; 2) a breach of that duty; 3) a causal connection between the conduct and the resulting injury; and 4) actual damages." ***Kelly v. St. Mary Hosp.***, 778 A.2d 1224, 1226 (Pa. Super. 2001). [Where, as here, a plaintiff asserts negligence against a possessor of land for injuries sustained as a result of a slip and fall accident], the plaintiff must prove that the defendant had actual or constructive notice of the dangerous or unsafe condition which caused the injury.[4] ***See Loeb v. Allegheny***

---

[4] The liability of a possessor of land for physical harms sustained by invitees is more completely stated as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

  (a)  knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

  (b)  should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

  (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (2d) OF TORTS § 343. This Court has explained the import of this section as follows:

the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence. In order to recover damages in a slip and fall case such as this, the invitee must present evidence which proves that the [land possessor] deviated in some way from his duty of reasonable care under the existing circumstances. This evidence must show that the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition. Section 343 also requires the invitee to prove either that the [land possessor] owner helped to create the

*(Footnote Continued Next Page)*

*County*, 147 A.2d 336, 338 (Pa. 1959); *see also Estate of Swift by Swift v. Northeastern Hosp.*, 690 A.2d 719, 723 (Pa. Super. 1997) ("An invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or [ ] had actual or constructive notice of such condition.") (citation omitted).

Our Supreme Court has described the plaintiff's burden in establishing the causation element of a negligence claim.

> [The mere occurrence] of an accident is no evidence of negligence. Plaintiff has the two-fold burden of proving that the defendant was negligent and that his negligence was the proximate cause of the accident[.] A jury is not permitted[ ] to speculate or guess; conjecture, guess[,] or suspicion do not amount to proof[.] Plaintiff ha[s] the burden of proving a defect or unsafe condition [on the premises] and that defendant had actual or constructive notice thereof.

*Freund v. Hyman*, 103 A.2d 658, 659 (Pa. 1954) (citations and ellipses omitted); *see also Smith v. Bell Tel. Co.*, 153 A.2d 477, 479-480 (Pa. 1959) ("[T]he jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but [] there must be evidence upon which logically its conclusion may be based.").

It is well-settled that negligence is not established unless shown to be "a causative factor" of the injury. *Freund*, 103 A.2d at 659; *see also Harrison v. Pittsburgh*, 44 A.2d 273, 274 (Pa. 1945) (same). However, "it is not necessary that plaintiff prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities but [s]he must eliminate those other causes, if any, as were fairly suggested by the evidence." *Cuthbert v. Philadelphia*, 209 A.2d 261, 263-264 (Pa. 1965) (citations omitted)[.]

---

harmful condition, or that it had actual or constructive notice of the condition.

*Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. 1994) (internal citations and quotation marks omitted).

*Mohar v. Shawver*, 2024 WL 1209236, *2-3 (Pa. Super. 2024 (non-precedential decision).

In their first issue, Appellants argue that the trial court disregarded Mrs. Harkins' deposition testimony pertaining to causation, failed to view the record in the light most favorable to Appellants, and improperly usurped the jury's role in resolving disputed factual issues. *See* Appellants' Brief at 14.

At her deposition, Mrs. Harkins testified regarding the causes and circumstances surrounding her fall at the Three Monkey's brew pub on October 20, 2018. According to her, neither food nor liquid was present on the floor of the establishment or could have caused her to slip. Initially, Mrs. Harkins attributed her fall to uneven floor tiles or a wave or uplifted section of a floor mat, but she was not certain. She later testified that uneven floor tiles did not cause her to fall; instead, she believed the heel of her shoe got caught on the rubber edge of a floor mat. Mrs. Harkins did not know how her heel caught the rubber edge of the floor mat or whether the rubber edge of the mat was sticking up before she fell. Sue Lewis, a friend of Mrs. Hawkins who accompanied her to the Three Monkey's brew pub, also gave a deposition but did not know what caused Mrs. Harkins to fall.

The trial court reviewed the testimony upon which Appellants relied and concluded that Three Monkeys was entitled to summary judgment because Appellants failed to adduce evidence identifying the cause of Mrs. Harkins' fall or a defective condition at the premises. It stated:

In the present case, [Mrs. Harkins] fails to provide adequate testimony about the factual cause of her injuries. Immediately prior to the incident, people occupied the restaurant, walking freely in the area of the accident. [Mrs.] Harkins testified she did not notice any defects, or material on the floor prior to the fall. Throughout her deposition she references a wave in the carpet, and uneven tile; however, she is unable to [specify] the actual cause of her fall. When asked if the wave in the carpet was the cause of her fall or the result of her fall, she indicates she does not know. [N.T. Harkins Depo., 1/21/22, at 30]. [Appellants also provided] testimony from a number of other individuals, none of who[m] provide[d] an eyewitness account of what transpired.

Trial Court Opinion, 4/18/23, at 5.

In ***Erb v. Council Rock Sch. Dist.***, 2009 WL 9097261 (Pa. Cmwlth. 2009) (non-precedential decision),[5] the Commonwealth Court granted summary judgment in favor of the defendant after determining that the plaintiff failed to meet her *prima facie* burden where she did not produce evidence tending to show that a defective condition was the proximate cause of her fall and injury. ***See Erb***, ***supra***, at *1. In that case, the plaintiff fell on a ramp but was unable to specify the cause of her fall. ***Id.*** at *3-*4. The critical factor in the Court's determination that the plaintiff failed to establish causation was that the plaintiff could not explain how any condition of the ramp caused her fall. ***Id.*** at *9-*10.

Viewing the evidence in a light most favorable to Appellants as the non-moving parties, we agree with the trial court that the record was devoid

---

[5] ***See*** Pa.R.A.P. 126(b)(1)-(2) ("non-precedential decision," that refers to unreported memorandum opinion of Commonwealth Court filed after January 15, 2008, may be cited for persuasive value).

of genuine issues of material fact, that Appellants failed to come forward with *prima facie* evidence to support their slip and fall claims, and that Three Monkeys was entitled to summary judgment as a matter of law. As a preliminary matter, although Mrs. Harkins initially claimed that misalignment of the floor tiles may have played a role in her fall, she later retracted that contention. Since Mrs. Harkins ultimately denied any causal connection between the alignment of the floor tiles and her injuries, the trial court correctly determined there was no evidentiary basis to support this theory of relief.

We further conclude that the trial court did not err in granting summary judgment on Appellants' alternate claim which asserted that Mrs. Harkins fell and sustained injuries after her heel became caught on an uplifted section of the rubber edge of a floor mat. Mrs. Harkins testified that she did not know how her heel got caught on the edge of the floor mat and she did not know whether the edge of the mat was sticking up before she fell. In this posture, there is no evidence to show that any alleged defect in the condition of the premises existed prior to Mrs. Harkins' fall, that any alleged defect caused Mrs. Harkins to fall, or that Three Monkeys knew or should have known of a potentially harmful condition.[6] Since Appellants cannot show that Three

_____

[6] We contrast the record in the case before us with the facts presented to the Commonwealth Court in **Hyatt v. County of Allegheny**, 547 A.2d 1304 (Pa. Cmwlth. 1988), *appeal denied*, 567 A.2d 654 (Pa. 1989). In **Hyatt**, the
*(Footnote Continued Next Page)*

Monkeys had actual or constructive notice of any alleged defect, Appellants cannot establish that Three Monkeys breached a duty of care owed to invitees such as Mrs. Harkins. *See Estate of Swift v. Northeaster Hosp. of Philadelphia*, 690 A.2d 719, 722-723 (Pa. Super. 1997) (plaintiff in slip and

_____

Commonwealth Court concluded that the trial court improperly granted a defense motion for a directed verdict on the plaintiff's claim that she injured her knee after she tripped on the uplifted edge of a temporary floor mat. The plaintiff's testimony at trial established the following facts.

> At trial, [the plaintiff] testified that she was unhurriedly proceeding to her job as a customer service agent for USAir at the Greater Pittsburgh International Airport on December 13, 1982. As she was entering the airport, she passed through one set of automatic glass doors, and proceeded through a second set into the lobby. As she was going into the lobby, [the plaintiff] testified that her right toe "[caught] on something" or "seemed to go into something" [] and she then fell forward to the floor, injuring her knee. When she turned around to see what had made her fall, she saw that the black rubber edge of the temporary mat placed beyond the door was not lying flat on the floor and the mat itself was not secured by tape. It was established that [the defendant] owned the temporary mats in the area of [the plaintiff's] fall and that it was [the defendant's] job to place, clean and tape them. It was the company's policy to tape down all four edges of the mats to prevent shifting and curling edges.

*Hyatt*, 547 A.2d at 1305-1306. Unlike the plaintiff in *Hyatt*, Appellants in this case came forward with no evidence pertaining to the pre-accident condition of the floor mat in the Three Monkeys' brew pub or the likelihood that Three Monkeys had actual or constructive knowledge of a defect. Thus, *Hyatt* convinces us that Appellants failed to come forward with *prima facie* evidence of their claims and that any recovery would require the factfinder to speculate on the issues of notice and causation. *See Shirey v. Berks Area Reading Transportation Auth.*, 2019 WL 1949330, *7 (Pa. Cmwlth. 2019) (non-precedential decision) ("A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor.").

- 10 -

fall case who alleged that fall was caused by water on floor could not establish that possessor of land breached its legal duty to business invitees where plaintiff presented no evidence as to how water got on floor, no evidence as to how long the condition existed, and no proof that land possessor had notice of the condition), *appeal denied*, 701 A.2d 577 (Pa. 1997).  In the absence of record evidence linking Three Monkeys' alleged negligence to the alleged, alternate cause of Mrs. Harkins' fall, the trial court correctly granted Three Monkeys' motion for summary judgment.

We now consider Appellants' supplemental challenge to the order that granted summary judgment in favor of Three Monkeys.  Here, Appellants argue that the trial court abused its discretion in excluding the expert report of John DiBenedetto.

The admission of expert testimony is a matter committed to the discretion of the trial court and will not be disturbed absent an abuse of that discretion.  **Commonwealth v. Walker**, 92 A.3d 766, 772 (Pa. 2014).  An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." **Id.** at 772-773 (citation omitted).

In their brief, Appellants point out that Mr. DiBenedetto listed the scientific, architectural, and industrial authorities upon which he relied.  These

included: National Floor Safety Institute standards; the ADA Accessibility Guidelines (ADAAG) of the Department of Justice Access Board; The International Property Maintenance Code (2018 edition); the Occupational Safety and Health Administration (OSHA) standards; Pennsylvania Landlord Responsibilities; the American National Standard Accessible and Usable Buildings and Facilities, 2003; the International Building Code, 2018 edition; and, American Society for Testing & Materials, ASTM Fl-637, Standard Practice for safe walking surfaces. *See* Appellants' Brief at 16. Appellants next contend that, after he reviewed these codes and guidelines, Mr. DiBenedetto offered the following opinion:

> Based upon a reasonable degree of architectural and professional certainty, the area of [Mrs.] Harkins' slip, trip, and fall contained the following dangerous and defective conditions: an uneven floor surface, deformed throw rug that stuck up from the floor one-half inch high, and insufficient signage to warn of this hazard. [Three Monkeys] owed duties to patrons of the restaurant, which are outlined in the aforementioned codes, regulations, and standards. Allowing these dangerous conditions to exist on the walking surface of the restaurant is a failure of those duties which were owed by [Three Monkeys] to [Mrs.] Harkins. The dangerous conditions, which were allowed to exist in violation of the above-referenced codes, regulations, and standards, directly caused the fall and injury to [Mrs.] Harkins.

Appellants' Brief at 16.

In its opinion, the trial court found that Mr. DiBenedetto's opinion expressed no specialized knowledge, failed to explain its conclusions with specific references to the cited standards, and failed to offer opinions specifically tailored to the facts established by the record. *See* Trial Court

Opinion, 4/18/23, at 7-8. Accordingly, the court rejected the report because it invited guesswork and conjecture.

> Pennsylvania Rule of Evidence 702 "permits expert testimony on subjects concerning 'knowledge beyond that possessed by a layperson.' It is the job of the trial court to 'assess the expert's testimony to determine whether the expert's testimony reflects the application of expertise or strays into matters of common knowledge.'" **Snizavich v. Rohm & Haas Co.**, 83 A.3d 191, 194 (Pa. Super. 2013) (citations to quoted authorities omitted). We have explained:

>> Admissible expert testimony that reflects the application of expertise requires more than simply having an expert offer a lay opinion. "Testimony does not become scientific knowledge merely because it was proffered by a scientist." Likewise, expert testimony must be "based on more than mere personal belief," and "must be supported by reference to facts, testimony or empirical data."

> **Id**. at 195 (citations to quoted authorities omitted). Accordingly, we have stated the following test to distinguish between admissible expert testimony and inadmissible lay testimony by an expert:

>> The exercise of scientific expertise requires inclusion of scientific authority and application of the authority to the specific facts at hand. Thus, the minimal threshold that expert testimony must meet to qualify as an expert opinion rather than merely an opinion expressed by an expert, is this: the proffered expert testimony must point to, rely on or cite some scientific authority - whether facts, empirical studies, or the expert's own research - that the expert has applied to the facts at hand and which supports the expert's ultimate conclusion. When an expert opinion fails to include such authority, the trial court has no choice but to conclude that the expert opinion reflects nothing more than mere personal belief.

**Id**. at 197.

After careful review, we agree that Mr. DiBenedetto's report was insufficient to meet the standards for expert evidence. Mr. DiBenedetto neither incorporated nor explained what any cited scientific or architectural standard meant within the context of this case. In other words, he did not make clear why adherence to the standards was important for safety and why any deviation from those standards (particularly any deviation measured at the site of Mrs. Harkins' fall) presented a danger to patrons of the Three Monkeys' brew pub. Moreover, without explaining the relevance of the cited standards, and without comparing those standards to conditions observed at the fall site, Mr. DiBenedetto's opinion failed to point out how scientific facts applied to the facts at hand and offered no specialized knowledge, grounded in scientific expertise, that supported his conclusions. Instead, Mr. DiBenedetto merely cited several scientific and architectural standards and then relayed his subjective intuitions regarding the cause of Mrs. Harkins' fall. Lastly, Mr. DiBenedetto, in formulating his opinion, assumed several facts that were either refuted or unsupported by the record. In this case, the trial court's consideration of the opinion offered by Appellants' expert was not manifestly unreasonable and was supported by the record. Therefore, because Mr. DiBenedetto's report provided no reliable scientific basis for the views he expressed, we conclude that the trial court did not abuse its discretion in rejecting Appellants' proffered expert.

Appellants next assert that the trial court abused its discretion in failing to sanction Three Monkeys for spoliation of evidence. This issue arises because, at the time of Mrs. Harkins' fall, Three Monkeys maintained security cameras in the area of the incident and footage from the cameras was maintained for approximately six weeks and then deleted. On February 14, 2019, approximately four months after the incident, Three Monkeys received notice that Appellants intended to pursue a cause of action to recover damages for injuries sustained in her fall.

Appellants argued that the court should refrain from entering summary judgment in view of Three Monkeys' destruction of the videotape. Notwithstanding, the trial court rejected Appellants' spoliation argument. First, the court determined that Three Monkeys had no actual knowledge of Appellants' claims since the surveillance video was deleted pursuant to restaurant policy six weeks after the incident and Three Monkeys did not receive notice of Appellants' claims until approximately four months after Mrs. Harkins sustained injuries in the fall. *See* Trial Court Opinion, 4/18/2023, at 10. Next, the court found that it was not foreseeable that deletion of the videotape would cause Appellants to suffer prejudice since it contained no relevant evidence. *Id.* at 9.

On appeal, Appellants contend the trial court abused its discretion because, in view of the seriousness of Mrs. Harkins' injury, Three Monkeys should have immediately anticipated litigation and preserved the video

recording. Appellants further argue that the loss of the video was prejudicial because it destroyed evidence of the cause of Mrs. Harkins' fall and it deprived them of the identity of additional potential witnesses. *See* Appellants' Brief at 21. Appellants conclude they were entitled to have a jury consider the missing video with an instruction which explained that the video would have been unfavorable to Three Monkeys since it was deleted before Appellants could inspect it and Three Monkeys should have understood its relevance to issues presented in the case. *See id*. at 19-20.

> When reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion. *Croydon Plastics Co. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa. Super. 1997) ("the decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court"), *appeal denied*, 717 A.2d 1028 (Pa. 1998). "An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." *Pilon v. Bally Eng'g Structures*, 645 A.2d 282, 285 (Pa. Super. 1994), *appeal denied*, 652 A.2d 1325 (Pa. 1994).
>
> In *Schroeder v. DOT*, 710 A.2d 23 (Pa. 1998), our Supreme Court adopted the spoliation-of-evidence standards set forth by the Third Circuit Court of Appeals in *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3rd Cir. 1994). According to *Schmid*, the spoliation doctrine is broadly applicable to cases where "relevant evidence" has been lost or destroyed:
>
> > Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Jamie S. Gorelick, Steven Marzen and Lawrence Solum, Destruction of Evidence, § 2.1 (1989). Such evidence permitted an inference, the "spoliation inference", that the destroyed evidence would have been unfavorable to the position of the offending party. As Judge Breyer put it in *Nation-Wide Check Corp. v. Forest Hills*

*Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982), "the evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document." As Judge Breyer also noted, the spoliation inference is also seen as having "prophylactic and punitive effects." *Id*. The admissibility of spoliation evidence and the propriety of the spoliation inference is well established in most jurisdictions, including Pennsylvania. *See e.g., Nation-Wide Check Corp.*, 692 F.2d 214 (1st Cir. 1982); *Mensch v. Bic Corp.*, 1992 WL 236965 (E.D. Pa. 1992) (citing Pennsylvania cases); Gorelick, et al., **supra**, § 2.24....

We believe the key considerations in determining whether such a sanction is appropriate should be: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *See e.g., Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263 (8th Cir. 1993); *SDI Operating Partnership, L.P. v. Neuwirth*, 973 F.2d 652 (8th Cir. 1992); Gorelick, et al, **supra**, § 3.16, p. 117 ("To fulfill the purposes of discovery sanctions ...—that is, to restore the accuracy of the trial, compensate innocent victims, and punish guilty spoliators—courts select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.").

*Schmid*, 13 F.3d at 78–79 (citations omitted).

*Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1269-1270 (Pa. Super. 2001), *aff'd per curiam*, 811 A.2d 565 (Pa. 2002).

We perceive no abuse of discretion under the specific circumstances of this case. We start with fault, which has two components: responsibility, and

the presence or absence of bad faith. ***Mount Olivet, supra***. A litigant is "responsible" and has a general duty to preserve relevant evidence where: (1) it knows that litigation is pending or likely; and (2) it is foreseeable that discarding the evidence would be prejudicial. ***Marshall v. Brown's IA, LLC***, 213 A.3d 263, 268 (Pa. Super. 2019), *appeal denied*, 226 A.3d 568 (Pa. 2020). The plaintiff's power to control the scene and to exercise authority over the preservation or destruction of evidence is a relevant factor in determining responsibility. ***Pia v. Perrotti***, 718 A.2d 321, 324 (Pa. Super. 1998), *appeal denied*, 737 A.2d 743 (Pa. 1999).

Of course, "the scope of the duty to preserve evidence is not boundless." ***Mount Olivet***, 781 A.2d at 1271. If a litigant is aware of a specific party's investigative interest, the interested party should have the opportunity to inspect the evidence. ***Id***. However, if the unpreserved evidence would be unlikely to reveal information of probative value, the disposing party may be considered less at fault for failing to preserve the proof. ***Id***.

In this case, the trial court's finding that Three Monkeys had no duty to preserve the videotape turned, in part, on its conclusion that the brew pub had no actual notice of litigation. While this determination is technically accurate, we cannot agree with the trial court that lack of actual notice wholly defeated Three Monkeys' duty to preserve the videotape. Astute individuals engaged in businesses that are open to the public may reasonably be presumed to know that surveillance videos of serious accidents are likely to

become the focus of future litigation. Moreover, the number of people who would possess an interest in such recordings is readily identifiable and minimal. Hence, through the exercise of reasonable diligence, we believe that Three Monkeys should reasonably have anticipated the possibility of future litigation by or on behalf of Mrs. Harkins and should have shouldered the minimal burden of preserving the video recording of her fall.

A second component of fault is the presence or absence of good faith. *Id.*; *Pia*, 718 A.2d at 324. In this instant case, the trial court found that Three Monkeys deleted the videotape pursuant to restaurant policy and did not act in bad faith. After reviewing the record in light of our deferential standard of review, we see no abuse of discretion in this conclusion.

Lastly, we consider the issue of prejudice. A litigant naturally suffers some prejudice where it has been precluded from conducting its own independent investigation of discarded evidence. *See Mount Olivet*, 781 A.2d at 1272; *Pia*, 718 A.2d at 325. On the other hand, prejudice is diminished where only speculative theories of causation support a remedy for spoliation. *See Mount Olivet*, 781 A.2d at 1272.

We are persuaded that Appellants suffered a very low degree of prejudice. Appellants argue that the deleted video recording could shed light on the cause of Mrs. Harkins' fall and, at the very least, could identify potential witnesses to the incident. As for causation, we determined above that Appellants abandoned floor tile alignment as the factual basis for their

recovery and, instead, focused solely on the allegation that an upturned rubber edge along a floor mat caused Mr. Harkins' fall. Neither Mrs. Harkins nor any other third-party witness, however, could say that they observed such a condition before Mrs. Harkins' fall and Mrs. Harkins could not specify how her fall occurred. As such, Appellants could not make a *prima facia* showing of negligence, nor could they link Three Monkeys' alleged negligence as a causal element to Mrs. Harkins' fall. A deleted video causes little prejudice to a litigant who has no proof. As for the loss of potential witnesses, several third-party witnesses were interviewed and deposed in this case and Appellants have not specified, with particularity, how the deleted videotape hampered their identification of individuals who were present and observed the event.[7] Thus, Three Monkeys' failure to preserve the videotape resulted in only a speculative degree of prejudice.

In light of our conclusion regarding prejudice, we see no abuse of discretion in the trial court's decision to refrain from issuing a sanction for spoliation. Here, a spoliation inference pertaining to the deleted video did not supplement the contested facts in a triable case; instead, it constituted the entirety of proof in Appellants' cause of action. "Generally, courts should select the least onerous sanction commensurate with the spoliator's fault and

---

[7] The record reflects that Appellant did not lose consciousness due to her fall and she was accompanied by Sue Lewis while she was at the brew pub. Both Appellant and her friend could have, and did, identify potential witnesses.

the other party's prejudice." **Mount Olivet**, 781 A.2d at 1273. An adverse inference based upon a deleted videotape cannot form the sole basis by which a party withstands summary judgment. We therefore conclude that the trial court did not abuse its discretion in refusing to deny summary judgment based upon Appellants' spoliation claim.

Order granting summary judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/2/2024